```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------ x
ADOLFO ARISTIZABAL, A.K.A. GREGORIO
MIRANDA,

                Petitioner,              MEMORANDUM
                                         AND ORDER
        - against -
                                         Civil Action No.
UNITED STATES OF AMERICA,                02-CV-5966 (DGT)

                Respondent.
------------------------------------ x
```

TRAGER, J.

This is an action brought by Adolfo Aristizabal ("plaintiff"), for the return of personal property administratively forfeited to the government after it was seized by the United States Drug Enforcement Administration ("DEA"). On October 31, 2002, plaintiff filed a complaint seeking the return of the property, alleging that defendant failed to follow the correct administrative forfeiture procedures.[1]

The government moves for dismissal of the complaint or, in the alternative, for summary judgment. For the following reasons, the government's motion for summary judgment is granted.[2]

---

[1] Plaintiff initiated this case by a one page letter dated October 31, 2002 which was construed as a new civil action. See October 31, 2002 Mot. for Return of Prop. by Adolfo Aristizabal ("Aristizabal Motion").

[2] Due to an administrative error, the government did not file the current motion with the court until February 2, 2005, despite the fact that the motion papers were served by July 29, 2003. See Plaintiff's Aff. in Supp. of his Mot. for return of

**Background**

On April 21, 1994, plaintiff was arrested on narcotics-related charges. See Decl. of Artemis Lekakis, dated July 10, 2003 ("Lekakis Decl."), Ex. A at 9 (criminal docket sheet for the case captioned United States v. Aristizabal, et al.). During plaintiff's arrest the DEA special agents seized $4,000.00 from the plaintiff's person. See Decl. of John Hieronymus, dated July 8, 2003 ("Hieronymus Decl.") ¶ 4(a).[3]

On or about June 6, 1994, pursuant to 19 U.S.C. § 1607(a), the DEA initiated an administrative forfeiture proceeding by sending a written Notice of Seizure form by certified mail, return receipt requested, to plaintiff's home address in New Jersey. Id. ¶ 4(b). In addition, pursuant to 19 U.S.C. § 1607(a), the DEA also posted announcements of the intended forfeiture in USA Today, a newspaper of general circulation in the Eastern District of New York, for three consecutive weeks on June 15, 22, and 29, 1994. Id. ¶ 4(c).

The published notice and the certified letter explained the options of filing a claim and cost bond or affidavit of indigency in lieu of cost bond to contest the forfeiture. Id. In

---

Seized Currency ("Plaintiff Aff.").

[3] In addition, the DEA also seized a cellular phone, a beeper, a gold ring, and two watches at the time of the arrest. By plaintiff's own admission, these items were returned to him at a later date. See Aristizabal Motion.

2

addition, both stated the respective deadlines for filing any such claim and explained the options of filing a petition for remission or mitigation.  Id.

The plaintiff never received the certified letter[4] because, at the time, he was incarcerated at the New York Metropolitan Detention Center ("MDC") in Brooklyn, New York.  See Plaintiff Aff. ¶ 6.[5]  On June 30, 1994, the DEA sent a second written notice of seizure by certified mail, return receipt requested, this time to the plaintiff's address at MDC.  See Hieronymus Decl. ¶ 4(d).  The written notice, which granted the plaintiff an additional twenty days from receipt of the letter to file a claim, was signed for and received by plaintiff on or about July 6, 1994.  Id.

On July 29, 1994, the plaintiff's legal counsel, Pamela J. Metzger, Esq., sent a letter to the DEA contesting the forfeiture.  See Plaintiff Aff. Ex. A (Letter dated July 29, 1994 from Pamela J. Metzger to DEA Forfeiture Office).  On August 1,

---

[4] Although this certified letter was accepted and signed for on June 9, 1994, see Hieronymus Decl. ¶ 4(b), plaintiff did not know who resided in his old apartment in New Jersey immediately after his arrest and claims that someone mistakenly signed the return receipt. See Plaintiff Aff. ¶ 6.

[5] Plaintiff was incarcerated at the Brooklyn MDC from April 22, 1994 through and including March 12, 1996, at which point he was moved to the Low Security Correctional Institution, Allenwood in White Deer, PA, where he is currently incarcerated.  See Lekakis Decl. Ex. C (Brooklyn Metropolitan Detention Center report).

1994, the DEA received the letter and on August 19, 1994, sent a certified mail notice to plaintiff, care of his legal counsel, notifying plaintiff that they were rejecting his claim because it was untimely.  See Hieronymus Decl. ¶ 4(f).  However, the letter stated that plaintiff had an additional twenty days from receipt of the letter to file a petition for remission and/or mitigation. Id.

Plaintiff's legal counsel accepted and signed for delivery of this certified letter, id.,[6] but the DEA did not receive any response thereafter.  Id. ¶ 4(g).  Accordingly, on September 12, 1994, pursuant to 19 U.S.C. § 1609, the DEA forfeited the subject currency to the United States.  Id.

On March 1, 1996, plaintiff pled guilty in the United States District Court for the Eastern District of New York to conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii)(II).  See Lekakis Decl. Ex. A at 17.  On July 22, 1997, plaintiff was sentenced to a term of 151 months' imprisonment and five years' supervised release.  Id. at 20.

On October 31, 2002, roughly eight years after the completion of the forfeiture process, plaintiff, proceeding pro

---

[6] The record is not clear as to the exact date the letter was accepted and signed for.  Although defendant included the return receipt as Ex. 8, the date of receipt is illegible. See Hieronymus Decl. Ex. 8 (return receipt for certified mail).

4

se, sent a letter motion pursuant to Fed. R. Crim. P. 41(e),[7] for return of the property seized by the DEA with this court.  See Aristizabal Motion.[8]

The government moves to dismiss, or, in the alternative, for summary judgment, arguing a lack of subject matter jurisdiction to review the administrative forfeiture of the subject currency. See Mem. of Law in Supp. of Gov't Mot. to Dismiss at 6-9.

**Discussion**

An action seeking to correct a procedurally deficient forfeiture is subject to the six-year catch-all statute of limitations for federal claims found in 28 U.S.C. § 2401.  See 28 U.S.C. § 2401(a);  Adames v. U.S., 171 F.3d 728, 731 (2d Cir. 1999)(holding that 28 U.S.C. § 2401 applies to "every civil action commenced against the United States" including actions brought under Fed. R. Crim. P. 41(e));  Polanco v. DEA, 158 F.3d 647, 652-53 (2d Cir. 1998)(same);  Boero v. DEA, 111 F.3d 301,

---

[7] Pursuant to amendments made in 2002, a motion for return of property is now authorized by Fed. R. Crim. P. 41(g).

[8] While this complaint was initially construed as a Rule 41(e) motion, because criminal proceedings were no longer pending against plaintiff at the time of his filing, it is instead treated as a civil action for equitable relief. See, e.g., Weng v. United States, 137 F.3d 709, 711 n. 1 (2d Cir. 1998), (where criminal proceedings against the person moving for return of seized property have already been completed, a district court should treat such a motion as a civil complaint), abrogated on other grounds by Dusenbery v. United States, 534 U.S. 161, 122 S.Ct. 694, 151 L.Ed. 2d 597 (2002).

305 n. 5 (2d Cir. 1997)(same).  Because § 2401(a) is jurisdictional in nature, In re Agent Orange Prod. Liability Litig., 818 F.2d 210, 214 (2d Cir. 1987), if plaintiff has failed to satisfy its requirements, the action must be dismissed for lack of subject matter jurisdiction.  Id.

According to § 2401(a), all civil actions brought against the United States "shall be barred unless the complaint is filed within six years after the right of action first accrues."  28 U.S.C. § 2401(a).  The Second Circuit has held that a claimant's cause of action accrues "when he discovered or had reason to discover that his property had been forfeited without sufficient notice."  Polanco, 158 F.3d at 654.  Consequently, the statute of limitation begins to run "at the earliest of the following dates: at the close of the forfeiture proceedings, however soon after the seizure; or if no forfeiture proceedings were conducted, at the end of the five-year limitations period during which the government is permitted to bring a forfeiture action."  Id.

In Adames v. U.S., the Second Circuit observed that the statements of the Polanco panel were difficult to reconcile.  See Adames, 171 F.3d at 731.  Specifically, it found the court's prior conclusion that a cause of action would not accrue until the claimant "discovered or had reason to discover that his property had been forfeited without notice" inconsistent with its holding that the limitations period could begin "at the close of

the forfeiture proceedings." Id. at 731-32 (quoting Polanco, 158 F.3d at 654). The Adames Court suggested that "it is conceivable that the Polanco court meant that the conclusion of the forfeiture proceeding could, by itself, charge the claimant with the knowledge ordinarily necessary to effectuate accrual." Id. at 732. Yet, it also recognized the possibility that the panel "believed that the initial seizure would put some or all claimants on inquiry notice of the ultimate disposition of their property – including forfeiture." Id.

This ambiguity is irrelevant to the instant action, however, since, unlike the situation in Adames, there is no question that plaintiff was aware that his property had been seized and would be forfeited. In fact, plaintiff admits that when he received the DEA's certified letter on or about July 6, 1994 he knew that the subject currency was going to be forfeited after twenty days. See Plaintiff Aff. Ex. B (plaintiff's letter to the Legal Aid Society). Although his claim did not accrue until the date the property was administratively forfeited, plaintiff's knowledge of the initial seizure gave him reason to know that forfeiture proceedings were imminent. See Pimentel, 99 F.Supp 2d at 426 n. 3. Thus, he clearly would have had "reason to discover that his property had been forfeited without notice" upon the termination of the forfeiture proceedings. Id.

The DEA conducted a forfeiture proceeding with regard to the

7

$4,000.00 at issue here on September 12, 1994, where the funds were declared forfeited. Therefore, plaintiff's claim accrued on that date and the statute of limitations expired on September 12, 2000. See Brown v. U.S., 99 F.Supp. 2d 403, 405 (S.D.N.Y. 2002). Given that plaintiff's complaint was not filed until November 4, 2002, over two years after the expiration of the limitations period, his claim is effectively time-barred.

## Conclusion

For the foregoing reasons, Government's motion for summary judgment is granted. The Clerk of Court is directed to close the case.

Dated: Brooklyn, New York
      June 27, 2005

SO ORDERED:

_____/s/_____
David G. Trager
United States District Judge